# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3749 | **DATE** | 11/4/2003 |
| **CASE TITLE** | Somerville vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion for summary judgment on the federal law claims in Counts I - VI and dismissal of the state law claims in Counts VII - IX for lack of subject matter jurisdiction is granted. Plaintiff's motion for summary judgment on Counts I and III is denied. Any pending motion in this case is terminated as moot. Any schedule set in this case is also vacated. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 5 2003 date docketed | 50 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/4/2003 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONICA SOMERVILLE,           )
                             )
        Plaintiff,            )
                             )
    v.                        )    No.  02 C 3749
                             )
CITY OF CHICAGO and MELVIN    )
BROOKS,                       )
                             )
        Defendants.           )
                             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Monica Somerville, an African-American woman, was employed as Chief Assistant Corporation Counsel, Torts Division, with defendant City of Chicago Corporation Counsel's Office ("the City") from June 1, 2000 until her termination on November 15, 2001. Ms. Somerville alleges that defendant Melvin Brooks, at the time Deputy Corporation Counsel and her supervisor, engaged in a series of sexually and racially harassing acts beginning in January 2001. Ms. Somerville also alleges that she was terminated in retaliation for reporting those acts in July 2001. Ms. Somerville sues under Title VII, 42 U.S.C. § 2000e et seq., for sex discrimination, race discrimination, and retaliation (Counts I-III). Ms. Somerville also sues under 42 U.S.C. § 1983 for sexual harassment, retaliation, and violation of due process (Counts IV-VI). Finally, Ms. Somerville alleges state law claims of intentional infliction of emotional distress, false imprisonment,

and assault (Counts VII-IX). The defendants move for summary judgment on all counts or, in the alternative, for summary judgment on the federal law claims in Counts I-VI and dismissal of the state law claims in Counts VII-IX for lack of subject matter jurisdiction. Ms. Somerville moves for summary judgment on Counts I and III. I grant the defendants' motion for summary judgment on Counts I-VI, and deny Ms. Somerville's motion for summary judgment on Counts I and III. I also grant defendants' motion to dismiss Counts VII-IX for lack of subject matter jurisdiction.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As both parties' motions address the same claims and evidence, I will first consider the defendants' motion, construing the facts in the light most favorable to Ms. Somerville.

Ms. Somerville's sexual harassment claim, Count I, is a hostile work environment claim. Title VII bans "conduct that unreasonably interfer[es] with an individual's work performance or

creat[es] an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Ms. Somerville must show that she was harassed because of her sex and that the harassment "was severe or pervasive enough to create a subjectively and objectively hostile work environment." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001).

Construing the facts in Ms. Somerville's favor, the essence of her sexual harassment claims can be summarized as follows:

(1) On January 4, 2001, Ms. Somerville and Mr. Brooks met in his office, behind closed doors. During that meeting, Mr. Brooks repeatedly used the word "expectations" when discussing Ms. Somerville's job performance to that date.

(2) On June 12, Mr. Brooks sent Ms. Somerville an email asking her whereabouts for two previous days.

(3) On the morning of June 28, Ms. Somerville and Mr. Brooks met in his office, behind closed doors. Mr. Brooks discussed her paralegal leaving and her job performance, specifically a training program she was involved with. Mr. Brooks was extremely angry and agitated, yelling at Ms. Somerville.

(4) In the afternoon of June 28, Ms. Somerville and Mr. Brooks met again in her office. Mr. Brooks asked Ms. Somerville to have lunch with him and his girlfriend, suggesting that Ms. Somerville might be able to improve her management skills by speaking with his girlfriend.

(5) On July 2, Ms. Somerville sent Mr. Brooks an email declining the lunch meeting with him and his girlfriend.

(6) On the morning of July 5, Mr. Brooks stormed into Ms. Somerville's office and shut the door. He demanded that they set a time for a meeting, which they set for that afternoon.

(7) In the afternoon of July 5, Mr. Brooks and Ms. Somerville met in his office, behind closed doors. Mr. Brooks expressed disappointment in Ms. Somerville's job performance and articulated a list of items for her to improve. He again used the term "expectations" but did not specifically clarify what that meant.

(8) On July 10, Mr. Brooks sent an email to Ms. Somerville confirming the areas he felt she needed to work on, and stating that he expected the issues to be resolved within 30 days.

(9) On July 11, Ms. Somerville sent a response email to Mr. Brooks, outlining the steps she was taking to address the issues.

(10) Also on July 11, Mr. Brooks sent a response email to Ms. Somerville, stating that her email was "confusing and rather immature and totally inappropriate."

(11) In the afternoon of July 11, Mr. Brooks entered Ms. Somerville's office, visibly angry, and shut the door. He began to yell at Ms. Somerville, and she left the office. Mr. Brooks demanded that she return to the office. Ms. Somerville returned to the office to retrieve her purse, and before she could leave, Mr. Brooks shut the door and told her to sit down. Mr. Brooks stood in

front of the door and prevented her from leaving. She sat down, and did not attempt to leave during the rest of the confrontation. Mr. Brooks initially stated that Ms. Somerville had to quit, but then reiterated that she was not living up to his expectations, and that he would be watching her over the next 30 days. Mr. Brooks then left the office.

Ms. Somerville's allegations do not rise to the level of sexual harassment. The law recognizes a continuum of potentially harassing acts, from sexual assault at one end (actionable) to "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" at the other (not actionable). *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (citing *Meritor*, 477 U.S. at 67; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The actions Ms. Somerville complains of fall nowhere on this continuum. She states that Mr. Brooks' use of the term "expectations" meant that he wanted to have sex with her. However, she can point to no words or actions on the part of Mr. Brooks that render this interpretation of his words plausible.

Ms. Somerville relies on *Drago v. Aetna Plywood, Inc.* to support her assertion that the request for sexual favors from Mr. Brooks did not need to be explicit to be actionable. 968 F. Supp. 1251, 1254 (N.D. Ill. 1997) (Hart, J.). However, the defendant in *Drago* engaged in some explicitly sexual acts. The defendant in *Drago* told the plaintiff he was in love with her, told her that

wanted to "make love" to her, asked if she had similar feelings, attempted to kiss the plaintiff, attempted to give the plaintiff gifts, touched the plaintiff frequently, and attempted to hold her hand. 968 F. Supp. at 1254. The defendant also asked the plaintiff "if her breasts had become bigger during her pregnancy" and if there was a chance that they would "get together." Id. at 1255. He also had a number of sexually explicit art objects in his office, and repeatedly asked the plaintiff if she was having sex with another employee. Id.

Here there are no such allegations of any explicit sexual acts on the part of Mr. Brooks. On the face of things, Mr. Brooks appears to have been addressing performance deficiencies on the part of Ms. Somerville. Without some evidence that his words held a second, harassing meaning, I will not draw the inference that he must have been demanding sex from Ms. Somerville. Summary judgment is granted in favor of the defendants as to Count I.[1]

II.

Ms. Somerville's second claim is for race discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq. Ms. Somerville's complaint does not make it clear whether she is attempting to prove race discrimination using direct or indirect evidence. Direct evidence is "[e]vidence which in and of itself suggests that the

---

[1] Ms. Somerville had also moved for summary judgment on Count I, and that motion is denied.

6

person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criteria." *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). The only direct evidence Ms. Somerson presents is a taped conversation between herself and Mr. Brooks. In the context of discussing the need for Ms. Somerville to wear professional attire in the office, Mr. Brooks stated that she had "a hurdle to get over" because she was black. He went on to share his own experiences as a black man, stating that he found that his own wearing of professional attire greatly changed others' perception of him. This single exchange does not suffice as direct evidence of race discrimination. There is no indication in the statements by Mr. Brooks that he was inclined to discriminate against Ms. Somerville because of her race. Ms. Somerville points to no additional evidence of race discrimination, and this court need not pore through the record searching on her behalf. *See, e.g., Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) ("We rely on the non-moving party to identify with reasonable particularity the evidence that precludes summary judgment.").

If Ms. Somerville is attempting to prove race discrimination using the indirect method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), she must establish that (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she was terminated; and (4)

she was treated less favorably than other, similarly-situated employees not members of the protected class. *See, e.g., Vakharia v. Swedish Covenant Hospital*, 190 F.3d 799, 806 (7th Cir. 1999), cert. denied, 530 U.S. 1204 (2000). Defendants argue that Ms. Somerville has failed to establish the second and fourth elements.

Ms. Somerville fails to establish that she was meeting the legitimate business expectations of her employer. Defendants state that Mr. Brooks and Ms. Somerville had at least four meetings in which her performance was discussed, as well as a written warning issued on July 11, 2001. Ms. Somerville does not dispute that these meetings occurred, nor that her performance was discussed in each of them. Defendants also state that Ms. Somerville was terminated for poor performance, including (1) errors in a trial leading to a $50 million verdict against the City (later settled for $2.7 million); (2) substandard performance in another trial leading to a $3 million verdict against the City; and (3) failure to take, or otherwise make provision for, a deposition in a third case. Ms. Somerville's only evidence that she was, in fact, meeting her employer's legitimate business expectations is her own testimony. However, her statements alone do not create a triable issue of fact. *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996). Ms. Somerville's perception of her performance is irrelevant; it is her employer's perception, in this case Mr. Brooks' perception, that matters. *Id.*

Ms. Somerville also fails to establish that she was treated less favorably than similarly-situated employees. Ms. Somerville fails to even identify any employees that are allegedly similarly situated. A similarly-situated employee is one who is "directly comparable to [the plaintiff] in all material respects," including having similar "experience, education, and qualifications." *Durkin v. City of Chicago*, 199 F. Supp. 2d 836, 844-45 (N.D. Ill. 2002) (Bucklo, J.). The only two potentially similarly-situated employees are Karen Seimetz and John Ehrlich, the other two Torts Division Chiefs at the time Ms. Somerville was employed. Ms. Somerville points to no evidence showing that Ms. Seimetz or Mr. Ehrlich were directly comparable to Ms. Somerville, that they shared her "experience, education, and qualifications," or that they had engaged in behavior similar to that for which she was disciplined. Ms. Somerville fails to provide either direct or indirect evidence of race discrimination. Summary judgment is granted in favor of the defendants on Count II.

### III.

Count III of Ms. Somerville's complaint alleges retaliation for her harassment complaint in violation of Title VII. The Seventh Circuit recognizes two methods for a plaintiff to prevent summary judgment on a retaliation claim. *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002). First, a plaintiff may present direct evidence that she engaged in protected activity

9

and, as a result, suffered an adverse employment action. *Id.* Ms. Somerville states that she filed her complaint with the City and, shortly thereafter, was terminated. Ms. Somerville presents no evidence that her termination or loss of supervisory responsibility were related to her charges of discrimination other than the proximity of the events in time.[2] "Mere temporal proximity ... will rarely be sufficient in and of itself to create a triable issue." *Id.* Further, defendants provide unrebutted evidence that Ms. Somerville would have been terminated for her poor performance regardless of her complaints, and that her ultimate supervisor, Mara Georges, was only made aware of that poor performance after Ms. Somerville initiated her grievance.

The second method by which Ms. Somerville can prevent summary judgment on her retaliation claim is to show that she, "and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [she] was performing [her] job in a satisfactory manner." *Id.* As discussed above, Ms. Somerville cannot show either any similarly-situated employees or that she was performing her job in a satisfactory

---

[2] Ms. Somerville made her initial report to Ben Gibson, title, on July 12, 2001. The email from Mr. Brooks removing certain of her responsibilities was sent on July 17, 2001. Ms. Somerville filed a grievance with the City on August 10, 2001, and was terminated November 15, 2001.

10

manner.  Summary judgment is granted in favor of the defendants on Count III.[3]

## IV.

Ms. Somerville's fourth claim is for a violation of her equal protection rights pursuant to 42 U.S.C. § 1983.  She claims that defendants subjected her to unequal and discriminatory treatment through creating a hostile work environment.  However, municipalities do not have *respondeat superior* liability under § 1983.  *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999).  To show liability on the part of the City, Ms. Somerville must show that her constitutional injury was caused by Mr. Brooks acting (1) pursuant to an express policy of the City; (2) pursuant to an unofficial, widespread policy or custom "so permanent and well settled as to constitute a custom or usage with the force of law"; or (3) as a "final policymaking authority."  *Id.* at 571-72 (internal quotations omitted).  Ms. Somerville makes no such showing.  The express policy of the City forbids behavior such as that Ms. Somerville complains of.  Ms. Somerville points to no evidence that the City so customarily ignored complaints of sexual harassment as to constitute an "custom or usage."  Finally, Ms. Somerville provides no evidence that Mr. Brooks was a "final policymaking authority" with respect to the City's sexual

---

[3] Ms. Somerville also moves for summary judgment in her favor on Count III, and that motion is denied.

harassment policy. Summary judgment is granted in favor of the City on Count IV.

To establish Mr. Brooks' liability, Ms. Somerville must show that he acted with "discriminatory intent," *Trautvetter v. Quick*, 916 F.2d 1140, 1150 (7th Cir. 1990), in addition to establishing sexual harassment using the same methods as under a Title VII. *Id.* As discussed above, Ms. Somerville cannot show sexual harassment. Also, she does not allege that Mr. Brooks' actions were because of her status as a woman, nor does she point to any evidence so showing. Summary judgment is also granted in favor of Mr. Brooks on Count IV.

V.

In Count V, Ms. Somerville alleges that her First Amendment rights have been violated by her termination in response to her harassment complaint and grievance. However, to properly establish this claim, Ms. Somerville must have been speaking on matters of public, not private, concern. *Gray v. Lacke*, 885 F.2d 399, 410 (7th Cir. 1989). Ms. Somerville's complaints concerned the alleged sexual harassment by Mr. Brooks, and had the goal of stopping the harassment. Such speech reflects private, not public, concerns. *See, e.g., Gray*, 885 F.2d at 411 (complaints to supervisors about sexual harassment involved matters of private concern); *Singleton v. Chicago Sch. Reform Bd. of Trustees*, No. 00-C395, 2002 WL 2017082, at *9 (N.D. Ill. Sept. 3, 2002) (Hibbler, J.) (stating

that sexual harassment complaints made with the goal of stopping the harassment are of a private, not public, nature). Ms. Somerville cannot establish her claim for violation of her First Amendment rights. Summary judgment is granted in favor of defendants on Count V.

VI.

Count VI claims that Ms. Somerville was deprived of her liberty and property interests in her position as Chief Assistant Corporation Counsel without due process. To establish a claim for interference with a liberty interest, Ms. Somerville must show that she was stigmatized by the defendants' conduct, that the stigmatizing information was published to third parties, and that she has experienced a tangible loss of other employment opportunities as a result. *Townsend v. Vallas*, 256 F.3d 669-670 (7th Cir. 2001). Ms. Somerville has failed to show that she is unemployable since her termination with the City. Since her termination, Ms. Somerville has worked with a legal service, a position she left voluntarily after a few months, and as a sole practitioner. Ms. Somerville also provides no evidence that any stigmatizing information was disseminated by the City after her termination. *See, e.g., Olivieri v. Rodriguez*, 122 F.3d 406, 408-09 (7th Cir. 1997).

In order to establish a property interest, Ms. Somerville must first show that she has a "legitimate claim of entitlement" to her

position. *Bd. of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972) (stating that a unilateral expectation is not enough). However, Ms. Somerville points to no evidence showing that she had a legitimate expectation of continued employment. *See, e.g., Mann v. City of Chicago*, No. 84-C11020, 1986 WL 8032, at *5 (N.D. Ill. Jul. 14, 1986) (Moran, J.) (stating that Assistant Corporation Counsel had no property interest in her position). Summary judgment is granted in defendants' favor on Count VI.

### VII.

The final three claims in Ms. Somerville's complaint are for intentional infliction of emotional distress (Count VII), false imprisonment (Count VIII), and assault (Count IX). All three claims are under Illinois state law, not federal law. Although I may exercise jurisdiction over these claims pursuant to 28 U.S.C. § 1367, I need not do so. As I have granted summary judgment on all federal claims in this action, judicial economy, convenience, fairness, and comity would not be served by retention of the state law claims. *See, e.g., Tirapelli v. Advanced Equities, Inc.*, 215 F. Supp. 2d 964, 974 (N.D. Ill. 2002) (Alesia, J.) (citing *City of Chicago v. Int'l. College of Surgeons*, 522 U.S. 156, 172 (1997)). I therefore dismiss without prejudice Counts VII, VIII, and IX.

ENTER ORDER:

*Elaine L. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 4, 2003

14